## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **M.C., a minor, by and through her parents, R.C. and M.C.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 14-5707** |
| | : | |
| **PERKIOMEN VALLEY SCHOOL** | : | |
| **DISTRICT, et al.** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                                   **MAY 11, 2015**

Parents and their first grade daughter with a speech and language impairment seek damages to remedy anxiety and emotional harm arising from a co-student's sexual touching of her on the school bus. While the sexual misconduct on the bus caused her anxiety, it did not manifest in educational harm. Federal courts require parents to exhaust a school district's due process review of allegations affecting children eligible for services under the Individuals with Disabilities Education Act ("IDEA") because we understand school districts possess the expertise and experience to prospectively remedy these educational issues. A more difficult issue for districts and parents is assisting IDEA eligible students victimized by misconduct on a school bus that creates understandable anxiety and emotional harm but, fortunately, does not adversely affect the student's education.

Here, a co-student sexually abused first grader M.C. on a school bus in her first month of elementary school. Her parents immediately challenged the school district's several actions and inactions, including failing to separate M.C. from the co-student perpetrator at the same school. Eventually, the district moved the perpetrator off the bus but he stayed in the same elementary school. While advocating in numerous fora, the parents did not seek redress under IDEA's

administrative due process procedures with the district. Instead, they filed this suit directly against the district and bus company approximately two (2) years after their daughter told them of the abuse on the bus. M.C. and her parents now seek monetary damages and other relief arising from: 1) the sexual abuse on the bus; and, 2) the district's failure to separate M.C. and the perpetrator after immediate knowledge of the abuse.

We find, given the non-educational misconduct on the bus and the district's alleged failure to separate M.C. and the co-student did not cause educational harm, the parents did not need to exhaust IDEA's due process hearing before invoking this Court's subject matter jurisdiction. Given the deference to the Complaint at this preliminary stage, Plaintiffs state a claim against the district but not against the bus company for violating federal disability laws. Plaintiffs state a negligence claim against the bus company. In the accompanying Order, we deny the District's motion to dismiss and grant in part the bus company's motion to dismiss.

## I.    FACTS PLEAD IN COMPLAINT

On October 8, 2012, M.C., then a first grader in Perkiomen Valley School District (the "District"), reported to her parents that a fellow student "Harry" had, over a period of time and on multiple occasions, exposed himself to her, pulled down her underwear and touched her private parts on the bus owned and operated by Defendant Student Transportation of America, Inc. ("STA"). M.C. is an eligible student under the IDEA as a result of her Speech/Language impairment. At the time, Harry sat in an assigned seat on the bus and allegedly concealed his misconduct behind an open umbrella.

The next day, M.C.'s parents contacted the District's principal several times reporting that Harry had molested M.C. and informed the District that Harry may have molested another student while on a play date at the student's house. The District told M.C.'s mother that the

situation would be "dealt with" but there were no plans to remove Harry from the bus. Thereafter, the District assigned an adult aide to Harry on the bus. In the interim, M.C.'s mother drove her to school. Eventually, the District removed Harry from the bus.

M.C.'s parents also filed a police report with the Pennsylvania State Police concerning Harry's misconduct. Eventually, the State Police closed the criminal investigation took no further action. The District told the Plaintiffs that "the absence of further action was due to the ages of the children involved."

Within two weeks, M.C.'s mother asked the District to transfer Harry out of M.C.'s school for her protection. The District declined this request. The District allegedly did not tell M.C.'s parents that, under its policy concerning sexual abuse, M.C. could have transferred schools within ten (10) days of the reporting of the incident. M.C.'s mother also spoke to other District officials who allegedly characterized the contact by Harry as "typical behavior" or that "some kids play doctor".

M.C. blamed herself for Harry's conduct and believed that her mother did not love her anymore and that her mother loved her siblings more. M.C. suffered with bouts of crying, nightmares and lack of sleep. While the District assured M.C.'s parents that Harry would have no further contact, the two children remained in the same school building and M.C. saw him nearly every day. In addition, on one occasion, Harry chased M.C. in the playground. He also stood next to M.C. in a parent pickup line and asked M.C. if she liked his new shoes and otherwise spoke to M.C. during a fire drill. On another occasion, Harry took M.C.'s jump rope away from her at recess. On another occasion, Harry, unaccompanied by any adult, appeared outside the girls' bathroom. In January 2013, M.C.'s mother told the District's Principal about

3

the continuing trauma.  M.C.'s mother also reported that Harry had pulled down his pants and underpants at recess to another student.

On April 13, 2013, much later in M.C.'s first grade year curriculum, Harry sat next to M.C. watching a video and M.C. went and sat at her desk.  The District later removed Harry from the room.  M.C.'s mother again reported this incident to the District the next day.

In late 2013, Dr. Nancy Bloomfield, a Pennsylvania licensed school psychologist, performed an independent psychological evaluation of M.C., reporting that M.C. was traumatized by the abuse and subsequent events.  Dr. Bloomfield concluded that M.C.'s experience of being molested on the bus by a fellow student, and her continued exposure to him, had a significant impact on her, including an anxiety disorder and continuing struggles with the trauma.

M.C. transferred to a different school within the District for her 2013-2014 school year. However, M.C. continues to suffer from the alleged trauma and nightmares.  She continued to associate the name Harry with trauma and feared that Harry would attempt to touch her again. As plead, M.C. suffered, and continued to suffer, physical and psychological symptoms caused by the Harry's conduct and its aftermath, including anxiety related stomachaches and headaches, for which she visited the school nurse.

## II.      PLAINTIFFS' LEGAL CLAIMS

Plaintiffs admit they did not request or participate in an IDEA due process hearing.  They commenced suit in this Court against the District and Student Transportation of America, LLC ("STA").  Plaintiffs assert claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, against the District and STA (Counts I & II).    Plaintiffs also allege negligence and

4

recklessness by STA (Count III).  As their requested relief, "Plaintiffs seek monetary damages and reasonable attorneys' fees and costs under Section 504 and the ADA against both defendants, monetary and punitive damages under Pennsylvania law as against STA, other ancillary relief available by statute, and such other relief as this Court deems proper." (ECF Doc. No. 1, Compl., ¶ 66.) [1]

### III.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) examines the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2L.Ed.2d 80 (1957).  A plaintiff must set forth "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), which gives the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (quoting *Conley,* 355 U.S. at 78.).    In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991)). Courts are directed to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008).

---

[1]      At our April 9, 2015 oral argument on Defendants' motions to dismiss, we ordered supplemental briefing on three issues: (1) whether the filing of a federal court complaint tolls the administrative statute of limitations; (2) the effect of *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266 (3d Cir. 2014) and *M.S. ex rel. Shihadeh v. Marple Newtown Sch. Dist.*, --- F. Supp. 3d ---, No. 11-5857, 2015 WL 70920 (E.D. Pa. Jan. 5, 2015); and (3) analysis of post-*Batchelor* cases not requiring administrative exhaustion.

## IV.   ANALYSIS

Plaintiffs claim the District, and its contracted bus company STA, failed to provide M.C. with a safe, appropriate, and properly supervised educational program, ultimately "causing" : 1) Harry's misconduct on the bus; and, 2)  "further emotional trauma caused by the District's failure to separate M.C. and her abuser, Harry." (ECF Doc. No. 1, Compl., ¶ 46.)   Plaintiffs do not assert Section 504 or ADA liability against STA based on the "failure to separate" claim. (*Id.* ¶ 4.)  Plaintiffs also seek compensatory and punitive damages from STA for negligence by "failing to take reasonable measures to ensure that students under [its] supervision could not engage in acts of sexual molestation towards fellow students riding on the bus."  (*Id.* ¶ 6.)

### A.   Subject Matter Jurisdiction over claims against the District.[2]

Based on a speech and language impairment diagnosed before attending first grade, M.C. is eligible for protections provided by the IDEA.   "'The purpose of the IDEA is to 'ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs . . ..'" *Batchelor*, 759 F.3d at 271 (quoting 20 U.S.C. § 1400 (d)(1)(A)).   States receive federal education funding upon complying with detailed procedures for, among other things, making placements for students with disabilities and establishing procedures for developing IEPs. *Id.* at 272.  School districts receiving funding must provide specified procedural safeguards to ensure the children and their parents are afforded due process.  This IDEA administrative process provides parents with an avenue to file a complaint and participate in an impartial due process hearing with respect to "any matter relating to the identification, evaluation, or educational

---

[2]      As IDEA does not apply to private entities, we need not include STA in our analysis of subject matter jurisdiction. *See J. v. Sch. Dist. Of Philadelphia*, No. 06-3866, 2007 WL 1221216, *4 (E.D. Pa. Par. 25, 2007).

placement of the[ir] child, or the provision of a free appropriate public education to such child . .
. ." 20 U.S.C. § 1415(b)(6)(A)).

After exhausting the IDEA's administrative process, an aggrieved party may then pursue
an action in a federal district which, under the IDEA, is authorized to grant the relief it
determines appropriate based upon the preponderance of the evidence. *Id.* at §1415 (i)(2)(C)(i)-
(iii). These remedies include attorneys' fees, reimbursement for private educational placement,
and compensatory education. *Batchelor,* 759 F.3d. at 272 (quoting *Chambers v. School District
of Phila. Bd. of Educ.,* 587 F.3d 176, 185 (3d. Cir. 2009)). However, where a claim falls within
the IDEA ambit (including claims under other federal statutes), a party fails to utilize the IDEA
administrative process, and no exception to the exhaustion requirement applies, a court must
dismiss the claims for lack of subject matter jurisdiction.[3] *Id.* at 269, 281.

Where a plaintiff does not bring claims directly under IDEA but rather under some other
federal statute, the court's inquiry necessarily turns on whether the parties could have asserted
them under the IDEA. *Id.* at 273. "Intertwined with this inquiry is whether the claim could have
been remedied by [the] IDEA's administrative process." *Id.* Our Court of Appeals recently
undertook such an analysis in *Batchelor*, where plaintiffs asserted claims for retaliation under
Section 504 and the ADA.[4] The student and parents did not pursue the IDEA's administrative
process and filed suit in this Court alleging retaliation in violation of Section 504 and the ADA.
*Id.* at 270. The plaintiffs alleged that the school district's conduct deprived the student of a
FAPE and caused "great harm to his level of educational achievement and personal well-being."

---

[3]  "If a case, over which the court lacks subject matter jurisdiction was originally filed in federal court, it must be dismissed." *In re Orthopedic "Bone Screw" Prods. Liab. Litig.,* 132 F.3d 152, 155 (3d Cir. 1997).

[4]  The *Batchelor* plaintiffs also asserted a claim for a direct violation of the IDEA and the Court of Appeals determined that claim required exhaustion. 759 F.3d at 273.

*Id.* at 274. The plaintiffs sought compensatory damages, statutory damages, reasonable attorneys' fees and "such other further relief as this court deems just and appropriate". *Id.* at 270-271. The plaintiffs argued that the issues were not educational but involved civil rights arising from retaliatory conduct. *Id.* at 273. The plaintiffs also argued IDEA's administrative process could not provide them with full compensatory damages.

The Court of Appeals addressed whether plaintiffs must exhaust the IDEA's process in Section 504 and ADA claims alleging the school retaliated against plaintiffs for enforcing their child's rights. *Batchelor*, 759 F.3d at 272. In a matter of first impression, the Court of Appeals held that the retaliation claims under Section 504 and the ADA "palpably relate" to providing a FAPE and, as such, fall within the scope of the IDEA. *Id.* at 273-74. The retaliation alleged by plaintiffs included bullying and intimidating the student's parent at meetings regarding the student's progress, failing to reimburse the parent for the cost of private tutors, replacing a tutor with whom the student worked well with a less effective tutor, placing the student in a class with a teacher the student identified as a bully, and refusing to allow the student to participate in extracurricular activities. *Id.* at 274. The court found that there is a "logical path to be drawn from the [plaintiffs'] claims of retaliation" to the failure to provide a FAPE by the defendant. *Id.* at 274-75.

The Court of Appeals explained the strong policy requiring exhaustion of remedies available under the IDEA. *Id.* at 275. "Exhaustion serves the purpose of developing the record for review on appeal, encouraging parents in local school districts to work together to formulate an IEP for a child's education, and allowing the education agencies to apply their expertise and correct their own errors. *Id* at 275 (internal citations omitted). The language of the statute and the strong policy reasons for exhaustion required dismissal of the claims for failure to exhaust.

8

The Court of Appeals further found that plaintiffs did not exclusively seek compensatory and punitive damages not available under the IDEA but sought "such other further relief as this court deems just and appropriate." *Id.* at 276. The court relied upon IDEA's rule of construction in § 1415(*l*), which bars plaintiffs from " 'circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging this claim under some other statute – *e.g*, Section 1983, Section 504 of the Rehabilitation Act, or the ADA.' " *Id.* (quoting *Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F. 3d. 272-281 (3d Cir. 1996)). Thus, the Court of Appeals found that non-IDEA claims must also be exhausted where they seek relief available under the IDEA. *Id.* at 273. This gives "educational professionals . . . the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Id.* at 276 (quoting *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996)).

More recently, in *M.S. v. Marple Newtown School District,* No. 11-5857, 2015 WL 70920 (E.D. Pa. Jan. 5, 2015), the esteemed Judge Restrepo, in light of *Batchelor*, addressed whether a plaintiff's Section 504 and ADA claims must be exhausted through the IDEA administrative process before bringing her claims in federal court. In *M.S.,* plaintiff alleged that she was traumatized during eighth grade when "B.C." sexually assaulted her sister, who was then a student at the school M.S. eventually attended. 2015 WL 70920, at *1. Thereafter, the perpetrator's family (formerly close friends) confronted M.S. and her family members with taunts and intimidating gestures. *Id.* Further, M.S. alleged that she began ninth grade with the perpetrator's minor brother in her class and her sister's perpetrator in the same building, causing the Plaintiff's school performance to deteriorate. *Id.* at *2. M.S. claimed her ability to function in school and ability to learn was substantially harmed by the presence of the younger brother in her classes as he continued to mention the pain and trauma of the victimization, as well as the

9

presence of the older perpetrator brother in the building. *Id.* M.S.'s school performance deteriorated further resulting in low grades, temporary suspensions, and detentions. *Id.* In light of this "educational shortfall", M.S.'s psychotherapist informed the school district that M.S.'s anxiety disorder and post-traumatic stress syndrome required her to change classes. *Id.* Due to the school district's alleged inactivity, M.S.'s school performance deteriorated further until she was required to enter homebound instruction. *Id.*

Judge Restrepo found M.S.'s claims fell within the "the ambit of IDEA" and required exhaustion. *Id.* at \*4 n.8. However, the court's decision focused on whether M.S. sought remedies available under the IDEA. M.S. sought compensatory damages not available in the IDEA process but also sought "any other relief deemed appropriate." M.S. argued exhaustion would have been futile because the IDEA could not grant the relief requested. Based on the scope of relief also available in the IDEA process, the court held that M.S. and her parents could not bring suit in this Court without exhausting the IDEA process. [5] *Id.*, \*5. Judge Restrepo concluded that this Court lacked subject matter jurisdiction absent exhaustion of the IDEA process. *Id.*

We turn now to M.C.'s claims in the instant case and find that her claims do not fall within the reach of *Batchelor* and *M.S.* We find M.C.'s claims are not educational in nature but are more akin to a personal injury claim incapable of remedy by the IDEA administrative process. Harry sexually assaulted M.C. on STA's bus and suffered severe emotional distress. The District's later "failure to separate" caused M.C. to see and be in close proximity with Harry. While Harry's assault and the District's subsequent inaction undoubtedly occurred in the

---

[5] On a summary judgment record, Judge Restrepo alternatively granted summary judgment to the school district finding there were no genuine issues of material fact that the alleged discrimination was solely on the basis of the disability. *Id.* at \*6. We are presently awaiting the Court of Appeals' review of the plaintiffs' appeal which may inform our further proceedings.

educational setting (*i.e.* the school building), we do not find that the claims "relate" to M.C.'s educational progress or program. She did not experience any "educational shortfalls" that could be corrected by educational professionals in the IDEA process. The "genesis" of her claims is not related to her education but rather a sexual assault and subsequent inaction by the District. The "manifestation" of her injuries is not educational. The IDEA cannot provide a "comprehensive educational solution" for something unrelated to M.C.'s education. *Batchelor*, 759 F.3d at 278. To require exhaustion here would expand the scope of the IDEA process to non-educational issues. While we recognize that the District may have been able to help the Plaintiffs by "separating" M.C. and Harry as requested, when the student does <u>not</u> allege the genesis or manifestation of injury are fairly considered educational, we will not require exhaustion from a non-disabled student complaining of sexual abuse and subsequent inaction. We see no reason to impose this extra procedural burden upon Plaintiffs here when non-IDEA eligible students need not meet this burden. The IDEA process does not substitute for the courtroom when there are no allegations of educational harm that a school district can prospectively remedy through the IDEA process.

The holding in *Batchelor* and *M.S.* do not militate a different outcome as they are distinguishable. In *Batchelor*, plaintiffs complained of harm directly related to various "educational harms": intimidating the student's mother at a meeting regarding his educational progress, failing to reimburse for the cost of private tutors, placing the student in a different class, and refusing to implement the terms of the student's IEP. *Id.* at 274. In *M.S.*, plaintiff alleged the "off-campus" sexual abuse and subsequent anxiety directly affected her school performance as it deteriorated with low grades, temporary suspensions and detentions until she

required homebound instruction and her harms incapable of redress by the IDEA administrative process. 2015 WL 70920, at *2.

These injuries materially differ than those alleged by M.C. and her parents. M.C. suffers from anxiety as a result of a sexual abuse and the District's subsequent inaction. Her harms include trouble sleeping, bouts of crying, nightmares, feeling guilt and shame regarding the abuse, wetting the bed at night, and feeling helpless in light of the terrible incident she endured. (ECF Doc. No. 1, Compl., ¶¶ 21-22, 27, 30, 32.) At oral argument, Plaintiffs' counsel admitted M.C. did not suffer educationally after the incident but rather she maintained her grades in light of the incident and did not require adjustment of her IEP or educational placement. Oral Arg. Tr., 27:16-21. We find IDEA's purpose not to be implicated given M.C.'s injuries. Requiring M.C. to exhaust administrative remedies would not be effective.

M.C.'s situation is more factually analogous to cases involving allegations of physical abuse or other non-educational injuries. Shortly after *Batchelor* and months before *M.S.* was decided, Judge Smith of this Court denied a school district's and bus company's motions to dismiss a Section 504 claim due to failure to exhaust the IDEA's administrative process. *Akil Abasi F. v. Pressley Ridge Sch. for the Deaf*, No. 14-335 (ORDER) (E.D.Pa. Oct. 28, 2014). In *Akil Abasi*, the plaintiff student and parent advanced claims of failure to provide him with a safe and appropriate educational program, including appropriate transportation services, based on alleged sexual assault by another student. Judge Smith distinguished the student sexual assault on the bus from the Court of Appeals' decision in *Batchelor* and rejected the exhaustion argument on the grounds that in cases such as this one involving a physical abuse, utilizing the IDEA's administrative process would be futile as the plaintiff presented "non-educational" injuries. *Id.* at n.1.

Similarly, the Court of Appeals for the Sixth Circuit recently held a plaintiff is not required to exhaust administrative remedies for "non-educational" injuries including "verbal[], physical[], and even sexual[] abuse." *F.H. ex. rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014). The Court of Appeals in *Hall* found that "these injuries are non-educational in nature and cannot be remedied through the administrative process." *Id.* These injuries, the court found, could not be redressed by IDEA and the plaintiffs were not required to exhaust. *Id.*

In *Alboniga v. School Bd. of Broward County, Fla.*, No. 14-60085, 2015 WL 541751 (S.D. Fla. Feb. 10, 2015), the court denied the district's motion for summary judgment on exhaustion finding the IDEA process is futile in a parents' challenge to the district's refusal to allow a student to have a service animal in school to assist in the event of a seizure.[6] In *Southard v. Wicomico County Bd. Of Educ.*, No. 14-323, 2015 WL 163358 (D. Md. Jan. 13, 2015), the district court required exhaustion of IDEA processes for challenges to retaliation manifested in the student's evaluations at a new school but not for adverse employment actions against the student's mother who alleges she lost her teaching job in retaliation for advancing her son's interest. In *Reid v. Prince George's County Bd. of Educ.*, no. 14-0600, 2014 WL 5089070 (D. Md. Oct. 8, 2014), the district court denied the district's and bus driver's motions to dismiss a disabled student's claims that they knew or should have known of the student's particular

---

[6]     A fair comparison of fact patterns is offered by Chief Judge Simandle of the District of New Jersey in two March 2015 opinions relying on *Batchelor* dismissing parent/student claims under, *inter alia,* Section 504 and the ADA for failure to exhaust the IDEA process. In. *J.Q. v. Washington Tp. School Dist.*, ---F.Supp.3d---, No. 14-7814, 2015 WL 1137865, *5 (D.N.J. March 13, 2015), the Chief Judge distinguished *Alboniga* and relied upon *Batchelor* in granting a school district's motion to dismiss on exhaustion grounds when the parents claimed the district violated the ADA and Section 504 by failing to provide a Section 504 education plan to assist the student with ADHD in her classes.   In *A.D. v. Haddon Heights Bd. of Educ.*, ---F.Supp.3d---, No. 14-1880, 2015 WL 892643, *14 (D.N.J. Mar. 2, 2015), the Chief Judge found the parent/student claims of attendance policies affecting the disabled student were FAPE challenges and while they sought "incidental monetary damages", the "genesis of his litigation concerns the interplay between S.D.'s disability and his education."

behavior disabilities and failed to take precautions to ensure her safety on her bus ride. The district court found that "the harm Reid alleges is not educational in nature, and the relief that Reid seeks is not relief available under the IDEA." *Id.* at 5. Accordingly, the IDEA process would be futile as the student, then in another school district, was not seeking prospective or injunctive relief but only monetary damages not available under IDEA. *Id.*

Even the Court of Appeals in *Batchelor* noted that district courts within this Circuit have expanded the use of the futility exception where "the plaintiff sought remedies unavailable under the IDEA, and *where the court was not presented with educational issues to be resolved."* *Batchelor*, 759 F.3d at 280 (citing cases applying futility exception, including *Vicky M. v. Northeastern Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 452-53 (finding exhaustion would be futile where plaintiffs sought damages for physical abuse and where no other educational issues needed resolution)).

These cases present a compelling argument for not requiring M.C. to exhaust her administrative remedies. First, her claims are not "related" to the IDEA as they were in both *Batchelor* and *M.S.*. As such, her claims fall outside the scope of the IDEA. Second, requiring her to exhaust her non-IDEA claims would be futile as M.C. has not plead "educational issues" or injury that could have been resolved by the administrative process since she suffered no educational harm. M.C.'s claims may have occurred in the educational context in the sense that the District's inaction occurred in a school building, but we find this not to be dispositive as the real harm alleged is to M.C.'s physical and mental well-being. It is inequitable to require a disabled student to overcome additional procedural obstacles not presented to non-disabled children where the injuries complained of are non-educational in nature. Accordingly, we find

14

M.C. is not required to exhaust her administrative remedies before we properly exercise subject matter jurisdiction over the claims.[7]

**B.     Plaintiffs state a claim against the District for violations of Section 504 and the ADA.**

Plaintiffs seek monetary relief arising from the District's failures leading to Harry's misconduct on the STA bus on and before October 8, 2015.  Plaintiffs claim that the Defendants violated Section 504 and the ADA in allowing Harry to engage in his sexual misconduct on the bus and subsequently failing to separate M.C. and Harry.[8]  Defendants argue that Plaintiffs cannot state a claim demonstrating a causal nexus between M.C.'s Speech/Language Impairment and their alleged actions.   The District also argues M.C. fails to allege deliberate indifference to satisfy the intentional discrimination requirement.

The District does not dispute that M.C. has a disability, she is "otherwise qualified" to participate in the school program, or that it receives federal financial assistance. (ECF Doc. No. 4-2, Def.'s Mem., 8.)  Defendants only dispute a nexus between M.C.'s disability and the alleged discrimination, as well as the presence of deliberate indifference.   At this stage, Plaintiffs allege facts that the District's conduct deprived her of the benefits of an educational program that sufficiently state a plausible claim under Section 504 and the ADA arising from the bus conduct

---

[7] We make this finding at a preliminary stage.  As subject matter jurisdiction can be raised at any stage if it later appears lacking, Defendants may later renew their subject matter jurisdiction argument.

[8]     To state a claim for violation of Section 504 and the ADA M.C. must demonstrate that she : "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013) (internal quotations omitted).

on or before October 8, 2012. [9]   It remains to be seen whether discovery into the District's

knowledge, or awareness, of Harry's proclivities and the presence of M.C. on the same bus

meets the statutory standards on summary judgment or trial.   The parties must proceed into

discovery and may, in accord with this Court's Order, move for summary judgment if warranted.

### C.   Plaintiffs state a negligence claim but fail to state a Section 504 or ADA claim against STA.

Plaintiffs broadly claim STA is liable under Section 504 or the ADA, and under common

law negligence, because of Harry's misconduct on the bus on or before October 8, 2012.

Plaintiffs admittedly do not cite any knowledge that M.C. was disabled or any causal connection

that could possibly be known to STA.

For Section 504 and ADA purposes, Plaintiffs do not plead a nexus between M.C.'s

Speech/Language Impairment and alleged discrimination by STA.     Plaintiffs do not plead the

STA bus driver was aware of Harry's prior conduct.   Plaintiffs do not plead how STA knew, or

could have known, of M.C.'s disability, particularly in the first six weeks of first grade.   As

Plaintiffs cannot plead a nexus to demonstrate discrimination against M.C. by Harry's alleged

conduct, we dismiss the Plaintiffs' Section 504 and ADA claims without prejudice should

discovery permit an amended pleading.

In contrast, Plaintiffs' common law negligence claim does not require a nexus with

M.C.'s disability. Plaintiffs plead STA's bus driver noted Harry's open umbrella, told Harry to

close it, Harry failed to comply and the driver took no further steps. (ECF Doc. No. 1, Compl.

---

[9]      Plaintiffs' Section 504 and ADA claims relating to the bus misconduct on or before October 8, 2012 are not based on IDEA. We do not borrow IDEA's statute of limitations. *See P.P. ex rel. Michael P. v. West Chester Area School Dist.*, 585 F.3d 727, 736-37 (3d Cir. 2009). We apply Pennsylvania's statutory two-year personal injury statute of limitations and its minority tolling mandate.  42 Pa.C.S.A. § 5533(b)(1)(i)-(ii).  Further, since the same standards govern both Section 504 and the ADA Plaintiffs state a claim under both.    *See S.H. ex rel. Durrell,* 729 F.3d at 260.

¶ 17.)  Plaintiffs further plead that had STA taken sufficient precautions, M.C. may not have been abused.  *Id.*  Plaintiffs allege STA's duty to secure a safe environment on the bus and STA breached its duty by failing to properly hire, employ, train, discipline and/or supervise its employees.  (*Id.* ¶¶ 61-63.)   As such, this one common law claim against STA may proceed into discovery.

We are also constrained to permit the punitive damages claim to proceed, although STA may move for summary judgment following discovery.

V.   **Conclusion**

As the Complaint alleges harm to M.C. due to non-educational injuries arising from non-educational misconduct, and given the deference we now give to Plaintiffs' allegations on a motion to dismiss, we retain subject matter jurisdiction and find the Complaint states a plausible claim that the District violated Section 504 and the ADA. Plaintiffs do not state a claim under Section 504 and the ADA against STA. Plaintiff states a claim at this stage for negligence against STA.  Discovery, including into the parties' knowledge as well as further defining whether the Plaintiffs' actual claim is for educational harm from non-educational injuries, will allow the parties and the Court to more fully evaluate the merits for summary judgment or trial, including subject matter jurisdiction which is always subject to further review.   In the accompanying Order, we deny the District's motion to dismiss and grant STA's motion in part (Counts I and II) and deny as to the negligence claim (Count III).